Joseph J. Tabacco, Jr. (SBN 75484)
Kristin J. Moody (SBN 206326)
**BERMAN TABACCO**
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6282
Email: jtabacco@bermantabacco.com
        kmoody@bermantabacco.com

*Local Counsel for Plaintiff and the Proposed Class*

Patricia I. Avery (admitted *Pro Hac Vice*)
Philip M. Black (SBN 308619)
**WOLF POPPER LLP**
845 Third Avenue
New York, NY 10022
Telephone: (212) 759-4600
Email: pavery@wolfpopper.com
        pblack@wolfpopper.com

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH COPLEY, individually and on behalf of all others similarly situated,<br><br>                     Plaintiff,<br><br>     v.<br><br>NATERA, INC.<br><br>                 Defendant. | Case No. 4:21-cv-08941-YGR<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND STRIKE**<br><br>Date:   May 24, 2022<br>Time:  2:00 p.m.<br>Judge: Hon. Yvonne Gonzalez Rogers<br>Location:     1301 Clay St.<br>                 Courtroom 1, 4th Floor<br>                 Oakland, CA 94612<br><br>Complaint filed: November 18, 2021<br>Trial: TBD |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................. ii

INTRODUCTION .......................................................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ........................................................................... 1

BACKGROUND ............................................................................................................................ 1

STANDARD OF REVIEW ............................................................................................................ 4

ARGUMENT ................................................................................................................................. 5

I.     PLAINTIFF HAS STATED A CLAIM UNDER THE CLRA AND UCL ........................... 5

   A.    Plaintiff Has Statutory Standing under the CLRA and UCL .......................... 5

      1.    The Challenged Conduct Stems from Natera ............................... 6

      2.    The Challenged Conduct Emanates from California ..................... 9

   B.    The Complaint Complies with Rule 9(b) ...................................................... 12

   C.    Plaintiff Has Alleged a Viable Economic Injury ............................................ 14

   D.    Plaintiff Has Stated a Claim of Quasi-Contract ............................................ 14

   E.    Plaintiff Has Stated a Claim Under the UCL and Has Plausibly Alleged Reliance ........ 15

II.    PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF ..................................... 16

III.   DEFENDANT'S ATTEMPT TO NARROW THE PUTATIVE CLASS IS PREMATURE AND MERITLESS ........................................................................................ 18

IV.   THERE IS NO BASIS TO STRIKE ANY OF THE COMPLAINT'S ALLEGATIONS ....................................................................................................... 20

CONCLUSION ............................................................................................................................ 21

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................................... 4

*Cannon v. Wells Fargo Bank N.A.*,
  917 F. Supp. 2d 1025 (N.D. Cal. 2013) ..................................................................... 10

*Castagnola v. Hewlett-Packard Co.*,
  No. C 11-05772 JSW, 2012 U.S. Dist. LEXIS 82026 (N.D. Cal. June 13, 2012)..................... 11

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018).............................................................................. 12, 17

*Davidson v. Kimberly-Clark Corp.*,
  No. C 14-1783 PJH, 2014 U.S. Dist. LEXIS 110055 (N.D. Cal. Aug. 8, 2014) ................. 20, 21

*Ehret v. Uber Techs., Inc.*,
  68 F. Supp. 3d 1121 (N.D. Cal. 2014) ..................................................................... 9, 10

*Eiess v. USAA Fed. Sav. Bank*,
  404 F. Supp. 3d 1240 (N.D. Cal. 2019) ......................................................................... 17

*Figy v. Lifeway Foods, Inc.*,
  No. 13-cv-04828-TEH, 2016 U.S. Dist. LEXIS 108755 (N.D. Cal. Aug. 16, 2016) ............... 19

*Fonseca v. Goya Foods, Inc.*,
  No. 16-CV-02559-LHK, 2016 U.S. Dist. LEXIS 121716 (N.D. Cal. Sep. 8, 2016)........... 19-20

*Gardner v. StarKist Co.*,
  No. 19-cv-02561-WHO, 2020 U.S. Dist. LEXIS 194519 (N.D. Cal. Oct. 17, 2020)............... 19

*Gerstle v. Am. Honda Motor Co.*,
  No. 16-cv-04384-JST, 2017 U.S. Dist. LEXIS 100580 (N.D. Cal. June 28, 2017) ................. 19

*Gross v. Symantec Corp.*,
  No. C 12-00154 CRB, 2012 U.S. Dist. LEXIS 107356 (N.D. Cal. July 31, 2012)................... 11

*Gutierrez v. Wells Fargo Bank, NA*,
  589 F. App'x 824 (9th Cir. 2014)........................................................................... 7, 16

*Hale v. Sharp Healthcare*,
  183 Cal. App. 4th 1373 (2010) ............................................................................... 14

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*,
  61 Cal. 4th 988 (2015) ............................................................................................ 15

*Hodgkins v. Frontier Airlines, Inc.*,
  Civil Action No. 1:19-cv-03469-RM-MEH, 2021 U.S. Dist. LEXIS 130888 (D. Colo. July 14,
  2021) ............................................................................................................. 17

*In re Apple Inc. Device Performance Litig.*,
  386 F. Supp. 3d 1155 (N.D. Cal. 2019) ......................................................................... 19

*In re Google Inc. Gmail Litig.*,
  No. 13-MD-02430-LHK, 2013 U.S. Dist. LEXIS 172784 (N.D. Cal. Sep. 26, 2013)............... 19

*In re iPhone 4S Consumer Litig.*,
   No. C 12-1127 CW, 2013 U.S. Dist. LEXIS 103058 (N.D. Cal. July 23, 2013)...................... 10

*In re Tobacco II Cases*,
   207 P.3d 20 (Cal. 2009...........................................................................................................7

*Johnson v. Nissan N. Am., Inc.*,
   272 F. Supp. 3d 1168 (N.D. Cal. 2017) ................................................................................... 6

*Jue v. Costco Wholesale Corp.*,
   No. C 10-00033 WHA, 2010 U.S. Dist. LEXIS 22394 (N.D. Cal. Mar. 11, 2010) ................. 20

*Kamal v. Eden Creamery, LLC*,
   No. 18-cv-01298-BAS-AGS, 2019 U.S. Dist. LEXIS 107263 (S.D. Cal. June 26, 2019) ......... 7

*Kearns v. Ford Motor Co.*,
   567 F. 3d 1120 (9th Cir. 2009).............................................................................................. 12

*Kennard v. Lamb Weston Holdings, Inc.*,
   No. 18-cv-04665-YGR, 2019 U.S. Dist. LEXIS 154421 (N.D. Cal. Sep. 10, 2019) ............... 14

*Kosta v. Del Monte Corp.*,
   No. 12-cv-01722-YGR, 2013 U.S. Dist. LEXIS 69319 (N.D. Cal. May 15, 2013) ............. 5, 21

*Kutza v. Williams-Sonoma, Inc.*,
   No. 18-cv-03534-RS, 2018 U.S. Dist. LEXIS 192456 (N.D. Cal. Nov. 9, 2018) ..................... 18

*Lack v. Cruise Am., Inc.*,
   No. 17-cv-03399-YGR, 2017 U.S. Dist. LEXIS 142344 (N.D. Cal. Sep. 1, 2017) ............. 4, 20

*Lewand v. Mazda Motor of Am., Inc.*,
   No. SACV 17-00620 JVS (JCGx), 2017 U.S. Dist. LEXIS 219127 (C.D. Cal. Nov. 8, 2017). 10

*Makaeff v. Trump Univ., Ltd. Liab. Co.*,
   145 F. Supp. 3d 962 (S.D. Cal. 2015)................................................................................. 8, 16

*Mazza v. Am. Honda Motor Co., Inc.*,
   666 F.3d 581 (9th Cir. 2012).................................................................................................. 18

*Moore v. Mars Petcare US, Inc.*,
   966 F.3d 1007 (9th Cir. 2020).......................................................................................... 12, 14

*Morrison v. Ross Stores, Inc.*,
   No. 18-cv-02671-YGR, 2019 U.S. Dist. LEXIS 90926 (N.D. Cal. May 30, 2019) ........... 18, 19

*Newton v. Am. Debt Servs.*,
   75 F. Supp. 3d 1048 (N.D. Cal. 2014) ..................................................................................... 6

*NL Indus., Inc. v. Kaplan*,
   792 F.2d 896 (9th Cir. 1986)................................................................................................... 5

*Nordberg v. Trilegiant Corp.*,
   445 F. Supp. 2d 1082 (N.D. Cal. 2006) ................................................................................. 11

*Norwest Mortg., Inc. v. Superior Court*,
   72 Cal. App. 4th 214, 85 Cal. Rptr. 2d 18 (1999).................................................................... 9

*Peterson v. Cellco P'ship*,
   164 Cal. App. 4th 1583 (2008) .............................................................................................. 15

*Planned Parenthood of Greater Wash. v. United States HHS,*
   946 F.3d 1100 (9th Cir. 2020) ................................................................. 17

*Pride v. Correa,*
   719 F.3d 1130 (9th Cir. 2013) ..................................................................... 5

*Rubio v. Capital One Bank,*
   613 F.3d 1195 (9th Cir. 2010) ..................................................................... 6

*Safe Air for Everyone v. Meyer,*
   373 F.3d 1035 (9th Cir. 2004) ..................................................................... 5

*Shay v. Apple Inc.,*
   512 F. Supp. 3d 1066 (S.D. Cal. 2021) .................................................... 7, 8

*Short v. Hyundai Motor Co.,*
   No. C19-0318JLR, 2020 U.S. Dist. LEXIS 193991 (W.D. Wash. Oct. 19, 2020) .................. 10

*Silverman v. Wells Fargo & Co.,*
   No. 18-cv-03886-YGR, 2018 U.S. Dist. LEXIS 197205 (N.D. Cal. Nov. 19, 2018) .............. 11

*Snarr v. HRB Tax Grp., Inc.,*
   839 F. App'x 53 (9th Cir. 2020) ................................................................. 16

*Stevenson v. Allstate Ins. Co.,*
   No. 15-cv-04788-YGR, 2016 U.S. Dist. LEXIS 34923 (N.D. Cal. Mar. 17, 2016) ........... 14, 15

*Stewart v. Kodiak Cakes, LLC,*
   No. 537 F. Supp. 3d 1103 (S.D. Cal. Apr. 28, 2021) ....................................... 18

*Stout v. GrubHub Inc.,*
   No. 21-cv-04745-EMC, 2021 U.S. Dist. LEXIS 232378 (N.D. Cal. Dec. 3, 2021) ............. 17

*Sullivan v. Oracle Corp.,*
   51 Cal. 4th 1191 (2011) ............................................................................. 9

*T. K. v. Adobe Sys.,*
   No. 17-CV-04595-LHK, 2018 U.S. Dist. LEXIS 65557 (N.D. Cal. Apr. 17, 2018) .............. 19

*Thornton v. Micro-Star Int'l Co.,*
   No. 2:17-cv-03231-CAS-AFMx, 2018 U.S. Dist. LEXIS 181912 (C.D. Cal. Oct. 23, 2018 .... 13

*Tidenberg v. Bidz.com, Inc.,*
   Case No. CV 08-5553 PSG (FMOx), 2009 U.S. Dist. LEXIS 21916 (C.D. Cal. Mar. 4, 2009) 11

*Vizcarra v. Unilever United States, Inc.,*
   No. 4:20-cv-02777-YGR, 2020 U.S. Dist. LEXIS 125649 (N.D. Cal. July 16, 2020).. 4, 5, 6, 16

*Wang v. OCZ Tech. Grp., Inc.,*
   276 F.R.D. 618 (N.D. Cal. 2011) ...................................................... 11, 17

*Woodard v. Labrada,*
   No. EDCV 16-00189 JGB (SPx), 2017 U.S. Dist. LEXIS 124546 (C.D. Cal. July 31, 2017) 6, 8

**Statutes**

Cal. Bus. & Prof. Code § 17200 ............................................................... 6

Cal. Bus. & Prof. Code § 17203 ............................................................... 7

Cal. Civ. Code § 1760 ............................................................................................................... 6

Cal. Civ. Code § 1770(a) ...................................................................................................... 6, 9

Cal. Civ. Code § 1780(a) ...................................................................................................... 6, 9

**Rules of Civil Procedure**

Rule 9(b) ........................................................................................................................ *passim*

Rule 12(b)(1)......................................................................................................................... 6, 17

Rule 12(b)(6)......................................................................................................................... 6, 19

**INTRODUCTION**

Plaintiff Elizabeth Copley ("Plaintiff" or "Copley"), individually and on behalf of all others similarly situated, brings this class action against Natera, Inc. ("Natera" or "Defendant"), alleging that Defendant has violated the California Consumer Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL"), and common-law quasi-contract by mispresenting that its genetic tests will cost no more than $249, and then charging patients hundreds or thousands of dollars more. Defendant has moved to dismiss the case (ECF No. 29), invoking several legal doctrines that Defendant contends bar these claims. However, as set forth below, Plaintiff's First Amended Complaint (ECF No. 28, the "Complaint")[1] satisfies all applicable pleading standards, and Defendant's motion should be denied.

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether Plaintiff states a claim under the CLRA and/or UCL, where she plausibly alleges that Defendant made misrepresentations emanating from California that induced her to use its services, causing her economic harm.

2. Whether Plaintiff has standing to seek injunctive relief, where Defendant's conduct persists and is likely to affect Plaintiff in any future interaction with Defendant.

3. Whether the Court should limit the scope of the putative class prior to discovery or class certification and in the absence of a detailed choice-of-law analysis by Defendant.

4. Whether the Court should strike certain allegations that pertain to the appropriateness of class certification.

**BACKGROUND**

Natera is a company that offers a range of genetic tests targeted toward individuals or couples who are, or wish to become, pregnant. ¶¶ 1-2, 15. These tests include the "Panorama," "Horizon," "Vistara," or "Spectrum" tests, which variously screen either the parent(s) or fetus for genetic or chromosomal conditions. *See id.*

---

[1] Citations to "¶_" refer to the Complaint. Citations to "Br." refer to Defendant's motion to dismiss (ECF No. 29).

Natera's headquarters is located in San Carlos, California, which is also where Natera processes the majority of its tests. ¶¶ 10, 12, 16. Natera sends out bills for its tests from a California address (PO Box 399023,[2] San Francisco CA 94139-9023), and uses its San Carlos, California headquarters address on test brochures, billing correspondence, and test results. ¶ 12. Natera also directs patients and providers to call a phone number with a 650- (San Francisco Bay Area) area code with questions. ¶ 12.

Natera does not publish or disclose the list price (i.e., the full amount it may charge patients or insurance companies) of any of its tests. ¶¶ 3, 19-20. However, Natera represents that its tests will not cost patients more than $249. ¶¶ 2, 3, 5, 17. Natera makes this claim on its website; on the phone with patients; and to doctor's offices, which pass this information along to patients. ¶¶ 22-25. Nowhere does Natera warn patients about the fact that the actual list prices of its tests are actually as high as $8,000, and that Natera may bill a patient's insurance company, and/or the patient directly, for this amount. ¶ 20. Having been induced to undergo a test under the false assurance that it would not cost more than $249, patients are understandably shocked to later receive bills totaling several hundred or even thousands of dollars from Natera. *See* ¶ 5. These enormous surprise bills arrive at a time when prospective parents are already feeling financially vulnerable due to the stress and expense of pregnancy and birth. *See id.*

Natera compounds this misrepresentation about the cost of its tests by also mispresenting that it offers a "Price Transparency Program." ¶ 4, 22-23. Natera states that it will "generate[] an insurance estimate," and "if [it] estimates your cost to exceed [its] cash price, [it will] contact you via text or email and you choose how you pay: insurance or cash." *Id*. However, in practice, Natera does nothing of the sort. Instead, Natera does not contact patients, does not generate estimates, and simply submits the tests through a patient's insurance. *Id.* Natera accepts whatever amount the insurance company will pay, and then still bills patients the amount determined by the insurance as the patient responsibility (which, again, can be hundreds or thousands of dollars). *Id.* Crucially, Natera does not advise patients that their out-of-pocket cost may exceed $249 if they choose to

<hr />

[2] Due to a typographical error, the Complaint alleges that this PO Box is number 299023. The correct number is 399023.

utilize their insurance coverage—even if the patient's insurance has already paid that amount (or more) to Natera. *Id.*

Natera makes these misrepresentations about the cost of its tests to patients directly, and, upon information and belief, also makes them to patients' medical providers, who then pass them along to patients. ¶ 26. This is confirmed by statements on Natera's bills. For example, the bills contain a section on the back stating: "Who is Natera? Natera offers non-invasive genetic testing services. Your physician is uncompromising in patient care and asked us to perform important tests on a blood sample collected during your office visit." *Id.* The bills also state: "Why did I receive a Natera Statement? You are receiving a statement/bill from Natera because genetic testing services were performed, on your behalf, at the request of your physician." *Id.* These statements show that Natera is aware that patients routinely learn about its tests and order the tests through their physicians, and that patients may not have even heard about Natera itself before receiving a bill from Natera. *See id.*

Plaintiff is a resident of Connecticut who was exposed to Natera's misrepresentations. In late 2019, when she was pregnant with her second child, her physician advised her to do a Panorama test. ¶ 29. Upon inquiring how much the test would cost, she was assured by her physician's office that it would not be more than "a couple hundred dollars." *Id.* On that assurance, she agreed to undergo the test. *Id.* She then did not hear anything further about or from Natera (i.e., she was not contacted pursuant to the Price Transparency Program) until she noticed a charge of $8,000 on her Explanation of Benefits ("EOB") statement that she received from her insurer. ¶ 30. Her insurer denied the claim, shifting potentially the entire cost onto Plaintiff. *Id.* She was shocked to see such an enormous charge, and her husband contacted both their insurer and Natera. *Id.* Plaintiff's husband informed Natera, on the phone, that he and Plaintiff were completely unaware that they could be charged thousands of dollars for the Panorama panel. ¶ 31. The Natera representative stated that if Plaintiff agreed to pay the bill instantly, Natera would accept a payment of $249 and waive the remainder. *Id.* Plaintiff's husband agreed to pay $249 on the phone using his credit card and requested a receipt from the Natera representative. *Id.* However, Plaintiff nevertheless received a bill for $721.10 from Natera, and later received a second bill for the same amount. *Id.*

These bills were payable to Natera at its San Francisco P.O. box address.  *Cf.* ¶ 12.  Plaintiff made one payment of $50 to Natera by check, noting on the check that it was paid under protest.  *Id.*  She then received a third bill from Natera for $671.10 (i.e., the $721.10 balance minus the $50 paid under protest).  *Id.*

Like Plaintiff, there are hundreds, if not thousands, of individuals who have been similarly deceived by Natera's misrepresentations about the cost of its tests, as reflected by hundreds of negative reviews on internet sites such as Yelp, Better Business Bureau, Reddit, and pregnancy forum What To Expect.  ¶¶ 6, 33-35.  As a common theme, these reviews recount the experiences of patients who expected to pay $249 for a Natera test, only to later receive a bill from Natera for hundreds or thousands of dollars more, without any advance contact by Natera pursuant to the Price Transparency Program, and which Natera demanded they to pay even if their insurance had already paid more than $249 to Natera.  *See id.*

## STANDARD OF REVIEW

"Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  *Lack v. Cruise Am., Inc.*, No. 17-cv-03399-YGR, 2017 U.S. Dist. LEXIS 142344, at *5 (N.D. Cal. Sep. 1, 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007)).  "Additionally, Rule 9 establishes a heightened pleading standard for allegations of fraud," which "requires the identification of the circumstances establishing the fraud, so that a defendant can respond to the allegations adequately."  *Id.* at *5-6.  While Rule 9(b) generally requires the complaint to allege the "'who, what, when, where, and how' of the alleged fraudulent conduct . . . the rule is not so stringent as to bar claims where specific details, not essential to preparing a defense, are not alleged."  *Id.* (quotation and citation omitted).

Under Rule 12(b)(6), a defendant may move to dismiss based on failure to state a claim upon which relief can be granted.  "Dismissal is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Vizcarra v. Unilever United States, Inc.*, No. 4:20-cv-02777-YGR, 2020 U.S. Dist. LEXIS 125649, at *5 (N.D. Cal. July 16, 2020).  "When considering a motion to dismiss, a court must accept all material allegations in the

complete as true and construe them in the light most favorable to plaintiff." *Id.* at \*4 (citing *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986)).

Under Rule 12(b)(1), a defendant may move to dismiss based on lack of jurisdiction. As applicable here, a "facial" jurisdictional challenge "accepts the truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Vizcarra*, 2020 U.S. Dist. LEXIS 125649, at \*5 (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6), namely by determining whether the allegations are sufficient to invoke the court's jurisdiction while accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor." *Id.* (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)).

Under Rule 12(f), the court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Motions to strike are generally disfavored and are not granted unless it is clear that the matter sought to be stricken could have no possible bearing on the subject matter of the litigation." *Kosta v. Del Monte Corp.*, No. 12-cv-01722-YGR, 2013 U.S. Dist. LEXIS 69319, at \*11-12 (N.D. Cal. May 15, 2013). "Consequently, when a court considers a motion to strike, it must view the pleading in a light most favorable to the pleading party," and "[a] motion to strike should be denied if there is any doubt whether the allegations in the pleadings might be relevant in the action." *Id.* (quotation and citation omitted).

## ARGUMENT

### I. PLAINTIFF HAS STATED A CLAIM UNDER THE CLRA AND UCL

#### A. Plaintiff Has Statutory Standing under the CLRA and UCL

Defendant argues that Plaintiff lacks standing to bring claims "under the UCL or the CLRA." *See* Br. at 6-11. Contrary to Defendant's contention, this is a ***statutory standing*** argument that is analyzed under Rule 12(b)(6), not Rule 12(b)(1) or Rule 12(b)(2). *See Vizcarra*, 2020 U.S. Dist. LEXIS 125649, at \*16. Regardless, as set forth below, Plaintiff has plausibly alleged her standing to seek relief under the CLRA and UCL.

1                    1.   The Challenged Conduct Stems from Natera

2          Defendant argues that Plaintiff lacks standing and/or fails to state a claim under the CLRA

3   and UCL because she has not alleged that Natera made any misrepresentations directly to her. *See*

4   Br. at 9-10 (section II.B.2); Br. at 16-18 (section III.D).[3]  However, the statutes do not require this.

5          The CLRA broadly prohibits "unfair methods of competition and unfair or deceptive acts

6   or practices . . . undertaken by ***any person*** in a transaction ***intended to result or that results*** in the

7   sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a) (emphasis added).

8   It further provides that "***[a]ny consumer*** who suffers any damage as a result of the use or

9   employment by ***any person*** of a method, act, or practice declared to be unlawful by Section 1770

10  may bring an action against that person . . . ." Cal. Civ. Code § 1780(a) (emphasis added).  Thus,

11  "the CLRA does not require a direct transaction between plaintiffs and defendants." *Johnson v.*

12  *Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1183 (N.D. Cal. 2017) (upholding CLRA claim against

13  manufacturer even though plaintiff purchased vehicle from a third-party reseller).  Moreover, he

14  CLRA is to be "liberally construed and applied to promote its underlying purposes, which are to

15  protect consumers against unfair and deceptive business practices and to provide efficient and

16  economical procedures to secure such protection."  Cal. Civ. Code § 1760.

17         Likewise, the UCL prohibits "any unlawful, unfair or fraudulent business act or practice

18  and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.  "Each

19  of these three adjectives captures a separate and distinct theory of liability." *Rubio v. Capital One*

20  *Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (quotation marks omitted).  "[T]he UCL casts a wide

21  net: potential defendants under section 17200 extend beyond the actual perpetrators of unlawful,

22  unfair, or fraudulent acts." *Woodard v. Labrada*, No. EDCV 16-00189 JGB (SPx), 2017 U.S. Dist.

23  LEXIS 124546, at *35-36 (C.D. Cal. July 31, 2017).  For example, "aiding-and-abetting liability

24  exists for UCL claims." *Newton v. Am. Debt Servs.*, 75 F. Supp. 3d 1048, 1064 (N.D. Cal. 2014).

25

26  ――――――――――――――――
    [3]    Defendant's brief raises this same argument in multiple places, including in a "reliance"
    subsection seeking dismissal under Rule 12(b)(1), and again in a later subsection seeking dismissal
27  under Rule 12(b)(6).  As this argument deals with whether Plaintiff has stated a claim, and is not
    related to the Court's jurisdiction, it should be analyzed under Rule 12(b)(6). *See Vizcarra*, 2020
28  U.S. Dist. LEXIS 125649, at *4.

Accordingly, courts rightly reject arguments attempting to shift blame for a defendant's own misrepresentations onto downstream third parties, as Defendant does here by blaming Plaintiff's physician's office for passing on Natera's misrepresentations. *See* ¶ 26. Indeed, "California courts . . . have repeatedly and consistently held that relief under the UCL is available without individualized proof of deception, reliance and injury. . . . Rather, California law permits plaintiffs to recover any property that may have been acquired by means of a defendant's false or misleading statements." *Gutierrez v. Wells Fargo Bank, NA*, 589 F. App'x 824, 827 (9th Cir. 2014) (quotations omitted) (citing *In re Tobacco II Cases*, 207 P.3d 20, 35 (Cal. 2009) and Cal. Bus. & Prof. Code § 17203).

For example, in *Kamal v. Eden Creamery, LLC*, No. 18-cv-01298-BAS-AGS, 2019 U.S. Dist. LEXIS 107263 (S.D. Cal. June 26, 2019), the defendant made a similar argument that the plaintiffs lacked standing under the CLRA and UCL because the misconduct alleged was "caused by third parties." *Id.* at *13. The court disagreed, noting that the "UCL and CLRA similarly require a ***causal connection*** between a plaintiff's alleged economic injury and the defendant's alleged conduct." *Id.* at *14 (emphasis added). The plaintiffs' allegations were sufficient because they "allege[d] that [defendants]—not third parties— . . . are the ***source*** of the allegedly deceptive and misleading . . . representations." *Id.* at *14 (emphasis added). Likewise, here, the Complaint alleges that Natera is the source of the false statements about the costs of its tests; having been injured by those statements, Plaintiff has alleged the requisite "causal connection" between the misrepresentations and her injury. *See id.*

Similarly, in *Shay v. Apple Inc.*, 512 F. Supp. 3d 1066, 1069 (S.D. Cal. 2021), the plaintiffs alleged claims against Apple for "marketing, selling and/or distributing defective, unsecure and valueless Apple gift cards that Defendants knew or should have known [were] subject to an ongoing scam where the funds on the gift cards [were] fraudulently redeemed by third parties accessing the Personal Identification Number ('PIN') prior to use by the consumer." *Id.* at 1069. The plaintiffs contended that Apple, among other things, "concealed material facts from customers regarding the vulnerabilities of its cards." *Id.* at 1070. Apple moved to dismiss the plaintiffs' CLRA and UCL claims, arguing that "that a claim under the UCL or the CLRA cannot be based on third-party

conduct." *Id.* at 1071. The court rejected the argument, observing that "Defendants focus on the third-party conduct's responsibility in the theft while Plaintiff's allegations center on Apple's affirmative acts and concealment involving its sale of gift cards. . . . Taking the allegations in the [complaint] as true, Plaintiff has alleged direct conduct and alleged participation in the alleged unfair business practices by Apple in violation of the CLRA and UCL." *Id.* at 1072. Similarly, here, Defendant's argument wrongly focuses on the statements made by Plaintiff's doctor, while the Complaint centers on Natera's own misrepresentations and omissions that were the ultimate cause of her injury.

Additionally, in *Woodard*, 2017 U.S. Dist. LEXIS 124546, the court sustained CLRA and UCL claims against companies whose products were marketed by Dr. Oz (the media personality), where the plaintiffs had heard about the products through Dr. Oz. *See id.* at *9. The Court noted that "the UCL imposes liability on parties whose agents engage in false advertising or unfair business practices, or who participate in a scheme that results in the dissemination of misleading or deceptive advertising (even if their role in the tortious acts may not give rise to liability independently)." *Id.* at *39. *Woodard* stands for the proposition that Defendant is liable under the CLRA and UCL to the extent its own conduct results in the dissemination of misrepresentations, which the Complaint here alleges is the case.

And, in *Makaeff v. Trump Univ., Ltd. Liab. Co.*, 145 F. Supp. 3d 962 (S.D. Cal. 2015), defendant Donald Trump attempted to argue "that [p]laintiffs' CLRA claim fails because there was no 'transaction' between himself and [plaintiffs] as they signed enrollment contracts with [Trump University], not Mr. Trump himself." *Id.* at 979. The court found this argument unavailing because "Mr. Trump made misrepresentations, such as his signed letter that '[m]y hand-picked instructors and mentors will show you how to use real estate strategies,' that were intended to, and did result, in the sale of [Trump University] programs to consumers." *Id.* at 980. The court also observed that "liability under the UCL . . . may be imposed against those who aid and abet the violation." *Id.* at 978 (quotation and citation omitted).

Here, the Complaint alleges that Natera disseminates misrepresentations that are intended to induce patients to undergo its tests, to Natera's financial benefit and patients' financial detriment.

*See generally* Complaint. Plaintiff was exposed to these misrepresentations, first through her doctor's office when she relied on them in deciding to undergo a test, and later on the phone with a Natera representative directly. ¶¶ 29-32. The Complaint specifically alleges that Natera is aware that patients often learn about its tests through their doctors, as Plaintiff did, based on Natera's need to identify itself on its bills with reference to a patient's doctor. ¶ 26. The allegations raise the plausible inference that Natera intends for its misrepresentations to be communicated to patients via their doctors. Simply put, Plaintiff has plausibly alleged that the false information she received about Natera's tests originated from Natera, making Natera liable under the CLRA and UCL.

2. The Challenged Conduct Emanates from California

Relatedly, Defendant argues that Plaintiff lacks standing to bring claims under the CLRA and UCL for lack of sufficient connection with the state of California. This argument also fails.

Initially, Defendant is wrong to assert that the CLRA and UCL are not meant to protect consumers outside of California.[4] As set forth above, the CLRA aims to protect "any consumer." Cal. Civ. Code § 1770(a); Cal. Civ. Code § 1780(a). Likewise, the UCL seeks to protect "any person" for unfair or unlawful competition by "any person," and authorizes "any person" to bring suit. Cal. Bus. & Prof. Code § 17203.

Accordingly, as this Court has observed, "[m]ultiple courts — including the California Supreme Court in *Sullivan* [*v. Oracle Corp.*, 51 Cal. 4th 1191 (2011)] — have permitted the application of California law where the plaintiffs' claims were based on alleged misrepresentations that were disseminated from California." *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1130 (N.D. Cal. 2014); *accord Lewand v. Mazda Motor of Am., Inc.*, No. SACV 17-00620 JVS (JCGx),

---

[4] *Norwest Mortg., Inc. v. Superior Court*, 72 Cal. App. 4th 214, 225, 85 Cal. Rptr. 2d 18, 25 (1999) is distinguishable, because there, the claims were "for injuries suffered by non-California residents, caused by conduct occurring outside of California's borders, by defendants whose headquarters and principal places of operations are outside of California," meaning there was no connection to California. Had there been, the case may have been decided differently, because the court noted that there "was no constitutional impediment to permitting non-Californians a right of action under the domestic statute because California has a 'clear and substantial interest in preventing fraudulent practices ***in this state*** and a legitimate and compelling interest in preserving a business climate free of fraud and deceptive practices,' and for that reason has a legitimate interest in 'extending state-created remedies to out-of-state parties harmed by wrongful ***conduct occurring in*** California.'" *Id.* at 224 (emphasis in original) (citation omitted).

2017 U.S. Dist. LEXIS 219127, at *8, 11 (C.D. Cal. Nov. 8, 2017) (even when a transaction "occur[s] in a state other than California," a plaintiff may still assert claims under the CLRA and UCL if "the point of dissemination of the [misleading statements] is California").

In *Ehret*, the plaintiff alleged that the defendant's "deceptive practices . . . were conceived, reviewed, approved and otherwise controlled from Defendant's headquarters in San Francisco, California," that those "misrepresentations and omissions . . . were contained on Defendant's website and mobile phone application, which are maintained in California," and that "[w]hen Plaintiff and class members used Defendant's services those [sic] transactions, including the billing and payment for those services, were processed on Defendant's servers in San Francisco, California." 68 F. Supp. 3d at 1131-32. The Court held that, by these allegations, the plaintiff had "provided sufficient factual allegations from which the Court can plausibly infer that [defendant's] alleged . . . misrepresentations emanated from California," and therefore that "for purposes of the motion to dismiss, application of the UCL and CLRA in these circumstances would not constitute extra-territorial application of these statutes." *Id.* at 1132.

As another court has observed, "for the UCL . . . and CLRA, courts have recognized that 'state statutory remedies may be invoked by out-of-state parties when they are harmed by wrongful conduct occurring in California.'" *Short v. Hyundai Motor Co.*, No. C19-0318JLR, 2020 U.S. Dist. LEXIS 193991, at *14-15 (W.D. Wash. Oct. 19, 2020) (quoting *In re iPhone 4S Consumer Litig.*, No. C 12-1127 CW, 2013 U.S. Dist. LEXIS 103058, at *23 (N.D. Cal. July 23, 2013))). Indeed, allegations that a company is headquartered in California "may be sufficient if coupled with allegations that a defendant's sales and marketing team operate out of the California office." *Id.* (citing *Cannon v. Wells Fargo Bank N.A.*, 917 F. Supp. 2d 1025, 1055-56 (N.D. Cal. 2013)).

Here, as explained above, Natera is headquartered in California, and the Complaint alleges specific facts showing that Defendant's billing practices emanate from California (and do not appear to be connected to any other state). For example, Natera sends out bills for its tests from a California address (PO Box 399023, San Francisco CA 94139-9023), and uses its San Carlos, California headquarters address on test brochures, billing correspondence, and test results, and directs patients and providers to call a phone number with a 650- (San Francisco Bay Area) area

code with questions.  ¶ 12.  These allegations, accepted as true, are more than sufficient to show that Defendant's misrepresentations were disseminated from California pursuant to the authority cited above.

Defendant argues that these allegations are insufficiently specific to show that Defendant's practices emanated from California, but the caselaw cited above counsels otherwise. *Cf.* Br. at 8 (citing six specific allegations connecting Defendant's billing practices to California).  Indeed, Defendant's own cases support the conclusion that the CLRA and UCL are applicable to conduct emanating from California, as is the case here.[5]

For example, in *Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618, 630 (N.D. Cal. 2011), the Court held that a plaintiff who lived in Washington could sue under the CLRA and UCL.  *See id.* The Court noted that the "facts alleged are that the misleading marketing, advertising, and product information are 'conceived, reviewed, approved or otherwise controlled from [the defendant's] headquarters in California.' These allegations find support in [plaintiff]'s further allegations that [defendant]'s executive offices are in California and that the company itself selects California law as its forum to address website-based complaints." *Id.*  The Court held that, "[t]aken as true for the purpose of a motion to dismiss, these allegations are ***more than sufficient*** to sustain [plaintiff]'s California-based claims." *Id.* (emphasis added).

Additionally, in *Silverman v. Wells Fargo & Co.*, No. 18-cv-03886-YGR, 2018 U.S. Dist. LEXIS 197205, at *8 (N.D. Cal. Nov. 19, 2018), this Court dismissed a UCL claim for lack of a

---

[5] *Gross v. Symantec Corp.*, No. C 12-00154 CRB, 2012 U.S. Dist. LEXIS 107356 (N.D. Cal. July 31, 2012) is distinguishable because there, the plaintiff had alleged that the defendant was headquartered in California but only alleged "generally that [defendant] runs its business in California," without "linking the alleged misconduct to California." *Id.* at *27-28.  The court observed that the claims would have survived had the plaintiff "allege[d] that [defendant's] sales and marketing departments operate out of it California offices." *Id.* at *28. Here, Plaintiff does just that by linking Defendant's billings practices to California. *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1096 (N.D. Cal. 2006), is also distinguishable; there, the residence of the plaintiffs was relevant because neither of the defendants was incorporated in or had its headquarters in California.  Defendant's other cases are likewise distinguishable because in those cases, unlike here, the pleadings lacked specific allegations showing that the challenged conduct emanated from California. *Cf. Castagnola v. Hewlett-Packard Co.*, No. C 11-05772 JSW, 2012 U.S. Dist. LEXIS 82026, at *10-13 (N.D. Cal. June 13, 2012); *Tidenberg v. Bidz.com, Inc.*, Case No. CV 08-5553 PSG (FMOx), 2009 U.S. Dist. LEXIS 21916, at *10-12 (C.D. Cal. Mar. 4, 2009).

connection to California, but specifically noted that the UCL would allow a claim by an out-of-state resident pertaining to "alleged conduct [that] occurred, at least in part, in California."

The Complaint here calls for the application of California law to conduct that emanated from California by a company headquartered in California which harmed Plaintiff. Here, because the Complaint contains the requisite specific allegations tying Defendant's billing practices to California, Defendant's statutory standing argument fails.

B. <u>The Complaint Complies with Rule 9(b)</u>

"To properly plead fraud with particularity under Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (quotation and citation omitted). This requirement is not onerous: to satisfy Rule 9(b), the complaint must simply "alleg[e] the basic premise of 'what is false or misleading about a statement, and why it is false.'" *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1019 (9th Cir. 2020).[6]

Assuming arguendo that the Complaint must comply with Rule 9(b), it does exactly that. The "who" is Natera; the "what" is Natera's promise that patients' out-of-pocket costs will not exceed $249, Natera's failure to disclose the true price of any of the tests, and Natera's promise of a "Price Transparency Program"; the "when" is consistently throughout the class period, including "in late 2019" when Plaintiff encountered these misrepresentations, and through the present; the "where" and "how" is through Natera's website, brochures, communications with patients in writing and over the phone, and communications with medical providers (all of which emanate from Natera's headquarters in California). ¶¶ 1-35. Natera's statements are false because the true

---

[6] Defendant cites extensively to *Kearns v. Ford Motor Co.*, 567 F. 3d 1120, 1124 (9th Cir. 2009), which, aside from predating *Davidson* and *Moore* on the topic of Rule 9(b)'s requirements, is also distinguishable. There, apparently the only statement the plaintiff cited in his complaint was a puffery statement that "CPO vehicles were the best used vehicles available as they were individually hand-picked and rigorously inspected used vehicles with a Ford-backed extended warranty." *Id.* at 1126. The Ninth Circuit rightly concluded that this did not "articulate the who, what, when, where, and how of the misconduct alleged" sufficient to "give Ford the opportunity to respond to the alleged misconduct." *Id.* Here, by contrast, Plaintiff's allegations are sufficiently specific, in accordance with the requirements of more recent Ninth Circuit precedent. *See Moore*, 966 F.3d at 1019-20 (distinguishing *Kearns*).

cost to patients often greatly exceeds $249, and Natera does not adhere to its Price Transparency promise and does not contact patients to advise them about costs or payment options. *See id.* These false statements are materially misleading because they cause patients to believe that they will not need to pay more than $249 for a Natera test, and are thereby induced to have the tests done. *See id.*

Plaintiff's own experience is entirely consistent with these allegations. Plaintiff was told by her doctor that her test would not cost more than "a couple hundred dollars," inducing her to undergo the test "on that assurance." ¶ 29. Plaintiff's husband was further told by a Natera representative, on the phone, that Plaintiff would only owe $249 if her bill was paid instantly. ¶ 31. However, Natera later sent a bill to Plaintiff for $721.10. ¶ 32. Also consistent with the above, Plaintiff was not contacted by Natera about her payment options pursuant to Natera's so-called Price Transparency Program. ¶ 30. And neither Plaintiff nor her husband were ever informed by Natera, while on the phone with the Natera representative or otherwise, that her doctor's office misspoke in quoting her a price of a "couple hundred dollars"; in fact, the Natera representative confirmed as much by quoting a price of $249. *See* ¶¶ 29-32.

The Complaint has more than sufficient detail to meet the pleading requirements of Rule 9(b). For example, in *Thornton v. Micro-Star Int'l Co.*, No. 2:17-cv-03231-CAS-AFMx, 2018 U.S. Dist. LEXIS 181912 (C.D. Cal. Oct. 23, 2018), the defendants invoked Rule 9(b) to argue "that the [pleading] only allege[d] that plaintiffs relied on representations made by third parties, and that plaintiffs fail to plead that [the defendant] made misrepresentations to these third parties with the intent or reasonable expectation that the third parties would repeat these misrepresentations to plaintiffs." *Id.* at *14. The court rejected this argument, holding "that plaintiffs also claim alleged misrepresentations on defendants' own website, on defendants' product packaging, and by defendants' agents." *Id.* at *20. These allegations allowed the court to "find[] that plaintiffs have adequately alleged that defendants made [actionable] misrepresentations . . . ." *Id.*

Likewise, here, the Complaint cites numerous specific, consistent statements made on Defendant's website, on Defendant's bills, and to Plaintiff herself. And Plaintiff alleges that she agreed to undergo the Panorama test on the basis of one of these misrepresentations, which

emanated from Natera in the first instance—that the test would cost no more than a couple hundred dollars. ¶ 29. These allegations are sufficient to put Defendant on notice of the fraud alleged, and therefore comply with Rule 9(b). *See Moore*, 966 F.3d at 1020 ("The fact that Plaintiffs placed Defendants on sufficient notice to respond to the alleged fraud reflects how their allegations meet Rule 9(b).").

### C. Plaintiff Has Alleged a Viable Economic Injury

Plaintiff also plausibly alleges an economic injury.[7]  As this Court has noted, economic injury is established when, "taking the[] allegations as true, plaintiff spent money she otherwise would have saved but for defendant's act." *Kennard v. Lamb Weston Holdings, Inc.*, No. 18-cv-04665-YGR, 2019 U.S. Dist. LEXIS 154421, at *7 (N.D. Cal. Sep. 10, 2019).  Here, Plaintiff anticipated paying "a couple hundred dollars," and in no event more than $249 after her husband called Natera directly, but was instead sent a bill for $721.10. ¶¶ 29-32.  Plaintiff did suffer tangible economic injury because she paid $50 to Natera, which she might not have done had she known the truth about the test's cost and decided not to take it. *See* ¶ 31.  Furthermore, Natera continued to demand the remainder of the bill ($671.10) from Plaintiff, which represents a potentially "imminent" economic harm.  ¶ 32; *see Hale v. Sharp Healthcare*, 183 Cal. App. 4th 1373, 1383 (2010) (medical bill represents economic injury).[8]

### D. Plaintiff Has Stated a Claim of Quasi-Contract

A claim for quasi-contract (i.e., a claim alleging unjust enrichment and seeking restitution) requires showing "receipt and unjust retention of a benefit at the expense of another." *Stevenson v. Allstate Ins. Co.*, No. 15-cv-04788-YGR, 2016 U.S. Dist. LEXIS 34923, at *15 (N.D. Cal. Mar. 17, 2016) (citation omitted).  The California Supreme Court has clarified that "a privity of

---

[7] Once again, Defendant's brief places this topic in the section seeking dismissal under Rule 12(b)(1), when it should be analyzed under Rule 12(b)(6).

[8] Curiously, Defendant argues that $299 (representing $249 plus the $50 that Plaintiff paid to Natera under protest) is somehow "consistent with her doctor's representation that the test would not cost more than 'a couple hundred dollars.'" Br. at 10.  Aside from the fact that it makes no sense to add the $50 paid to reach the $299 figure when Plaintiff's husband only acquiesced to paying $249, it remains the case that $299 is essentially three hundred dollars, making it in fact significantly more than "a couple" (i.e. two) hundred dollars.  Semantics aside, Defendant's argument asserting lack of economic harm is legally unsupported and must be rejected.

relationship between the parties is not necessarily required" for an unjust enrichment claim, and that the obligation to make restitution arises whenever "the enrichment obtained lacks any adequate legal basis and thus cannot conscientiously be retained." *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 998 (2015).

Repeating its argument pertaining to lack of economic harm, Defendant argues that it would not be unjust for it to retain $299, because that amount is purportedly "consistent with" Natera's statements about the cost of its tests. *See* Br. at 18.[9] Setting aside how Defendant arrived at the $299 figure when Plaintiff's husband only acquiesced to paying $249, Defendant ignores that it *billed* Plaintiff for more than twice this amount ($721.10), and did so repeatedly. ¶¶ 31-32. The Complaint plausibly alleges that it would be unjust for Defendant to obtain and/or retain this amount, or indeed any amount above $249, from Plaintiff or any putative class member, given Defendant's misrepresentations. Again, Defendant's billing practices are unfair to patients because they induce patients to undergo a test that they think will cost no more than $249, but Defendant then bills them and/or their insurance companies hundreds or thousands of dollars more than that, and even bills patients when their insurance companies have already agreed to pay Natera $249 or more on a claim. ¶ 23. Having promised an out-of-pocket cost of $249, it is unfair and unjust for Defendant to collect or seek to collect more from patients. Accordingly, Plaintiff has stated a claim for quasi-contract. *See Stevenson*, 2016 U.S. Dist. LEXIS 34923, at *15.

E. <u>Plaintiff Has Stated a Claim Under the UCL and Has Plausibly Alleged Reliance</u>

Defendant devotes a separate section of its brief to arguing that Plaintiff fails to state a claim under the UCL. *See* Br. at 16-18. However, this section merely reiterates Defendant's arguments that Plaintiff fails to state a claim under the CLRA (for the "unlawful" and "fraudulent" prongs of the UCL), and that Plaintiff fails to meet the requirements of Rule 9(b) (for the "unfair" prong of the UCL). *See id.* Thus, Defendant's argument about the UCL is entirely repetitive and can be

---

[9] Defendants cite *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1591 (2008), but that case is distinguishable; there, the plaintiffs had failed to state an unjust enrichment claim because, based on their allegations, they "obtained the bargained for [product] at the bargained for price." Here, Plaintiff was not even aware of the price, that price having been concealed and misrepresented by Natera.

rejected for the same reasons and pursuant to the same authority already set forth above in Parts

I(A)(1) and I(B).

Likewise, in conclusory fashion, Defendant devotes a separate section to arguing that

Plaintiff fails to allege actual reliance on Natera's misrepresentations. *See* Br. at 9-10. Again, this

section merely repeats Defendant's argument that Plaintiff did not rely on statements made directly

by Natera; it does not actually contend that Plaintiff did not rely on the challenged statements. *See*

Br. at 9-10. To the contrary, Plaintiff alleges that it was "on th[e] assurance" that the test would

not cost more than "a couple hundred dollars" that she agreed to do the Panorama test—an

assurance that the Complaint plausibly alleges originated from Natera's own misrepresentations.

¶ 29. In the face of Natera's consistent statements on its website, brochures, and via its call center

representatives, it is implausible to suggest that the information Plaintiff obtained from her doctor

came from any other source but Natera (and it is even more implausible to suggest that her doctor

made the number up out of thin air). *See Makaeff*, 145 F. Supp. 3d at 978 (actual reliance shown

where "core misrepresentations occurred in [company] advertisements featuring and approved by"

the defendant (citation omitted)). Moreover, Plaintiff does allege that she relied on Natera's direct

misstatements, when Natera's representative on the phone told Plaintiff's husband that Natera

would accept $249 for the test (a figure which he acquiesced to paying). ¶¶ 29-31. Plaintiff

therefore satisfies the actual reliance requirement. *See Gutierrez*, 589 F. App'x at 827.

## II. <u>PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF</u>

Defendant alternatively seeks partial dismissal of the Complaint on the basis that Plaintiff

lacks standing to seek injunctive relief.[10] This argument also fails.

Initially, Defendant ignores that the CLRA and UCL offer a remedy beyond individual

injunctive relief in the form of "public injunctive relief," which "is relief that has the primary

purpose and effect of prohibiting unlawful acts that threaten future injury to the general public."

*Snarr v. HRB Tax Grp., Inc.*, 839 F. App'x 53, 54 (9th Cir. 2020) (formatting and quotation

omitted). Here, Plaintiff "has standing to seek public injunctive relief because she has adequately

---

[10] Unlike Defendant's other arguments, this argument appears to rely on Article III principles and
is thus analyzed under Rule 12(b)(1). *See Vizcarra*, 2020 U.S. Dist. LEXIS 125649, at *16.

alleged injury-in-fact under current Ninth Circuit law." *Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1258 (N.D. Cal. 2019) (citing *Davidson*, 889 F.3d at 969). The injunctive relief sought in the Complaint can be characterized as public injunctive relief because virtually any member of the public could become a Natera customer (knowingly or unknowingly). *See Stout v. GrubHub Inc.*, No. 21-cv-04745-EMC, 2021 U.S. Dist. LEXIS 232378, at *24 (N.D. Cal. Dec. 3, 2021) (private and public injunctive relief may be sought in the alternative).

As to Plaintiff's standing to obtain injunctive relief on her own behalf, the Ninth Circuit has held that consumers who were previously deceived by a defendant's misrepresentations may have standing to seek injunctive relief. *Davidson*, 873 F.3d at 1115.[11] This case concerns testing that is performed during or in anticipation of pregnancy—a condition that is limited in duration, but which might occur again. This, however, does not defeat standing: even though Plaintiff has not "averred an imminent intent to become pregnant, [her] injury is predicated upon conduct which occurred during past pregnanc[y], an inherently temporary condition, and the real prospect that it will occur again." *Hodgkins v. Frontier Airlines, Inc.*, Civil Action No. 1:19-cv-03469-RM-MEH, 2021 U.S. Dist. LEXIS 130888, at *22 (D. Colo. July 14, 2021). Moreover, the Complaint alleges that Defendant's practices remain in effect, and are therefore likely to affect Plaintiff again if she is subjected to a Natera test during a future pregnancy. *See* ¶¶ 17-28, 44; *Planned Parenthood of Greater Wash. v. United States HHS*, 946 F.3d 1100, 1110 (9th Cir. 2020) (no bar to standing where plaintiff "can reasonably expect to be subject to the same injury again" based on the defendant's "declination to renounce a practice"). Indeed, as the Complaint alleges, Defendant's practices are especially egregious because they target individuals who are already feeling financially vulnerable dealing with the stress and expense of pregnancy, and add to that stress by saddling them with an unexpected bill for hundreds or thousands of dollars. *E.g.* ¶¶ 5, 23, 33.

Additionally, the Complaint also alleges that "Natera's bills to patients reflect Natera's awareness that patients may be hearing about Natera for the first time when they receive a bill from Natera." ¶ 26. Thus, patients may not even know whether they will be subjected to a Natera bill—

---

[11] Defendant's cases, including *Wang*, 276 F.R.D. at 626, are not persuasive insofar as they predate *Davidson*.

but, if they are, Natera's conduct prevents them from knowing what amount they will be charged, and whether that amount will be reasonable. *E.g. id.* ¶¶ 19-20 (Natera does not disclose the prices of its tests or adhere to its Price Transparency Program). In these circumstances, injunctive relief is warranted specifically ***because*** of Plaintiff's (and putative class members') uncertainty about Defendant's prices and whether they can rely on Defendant's representations again in the future. *See Kutza v. Williams-Sonoma, Inc.*, No. 18-cv-03534-RS, 2018 U.S. Dist. LEXIS 192456, at *9 (N.D. Cal. Nov. 9, 2018) ("*Davidson* stands as clear authority that a plaintiff may seek injunctive relief based on the future harm of not being able to rely on the [defendant's statements] when trying to make an informed choice"); *Stewart v. Kodiak Cakes, LLC*, No. 537 F. Supp. 3d 1103, 1127-28 (S.D. Cal. Apr. 28, 2021) (where "[p]laintiffs cannot check" whether the defendant's representations are accurate, they "face an injury of being unable to rely upon [d]efendant's . . . statements in deciding whether to purchase the product in the future," therefore "establish[ing] Article III standing to assert their claim for injunctive relief").

Based on the foregoing, Plaintiff has pleaded a plausible entitlement to injunctive relief at the pleading stage.

## III.      DEFENDANT'S ATTEMPT TO NARROW THE PUTATIVE CLASS IS PREMATURE AND MERITLESS

Within its section seeking dismissal on the basis of Rule 12(b)(6), Defendant argues that Plaintiff "cannot assert nationwide class claims under California law," citing to *Mazza v. Am. Honda Motor Co., Inc*., 666 F.3d 581 (9th Cir. 2012) and its progeny. Br. at 15. This choice-of-law argument is premature and misplaced.

First, Defendant "conflates the application of California law to an out-of-state plaintiff, which courts permit when defendant's conduct allegedly emanates from California, with the choice-of-law analysis necessary to determine whether California law should apply to a ***nationwide class***." *Morrison v. Ross Stores, Inc.*, No. 18-cv-02671-YGR, 2019 U.S. Dist. LEXIS 90926, at *3 (N.D. Cal. May 30, 2019) (emphasis in original). Defendant's argument relies on the conclusory assertion that "[t]he alleged transaction central to [the Complaint] occurred entirely in Connecticut and the task of regulating consumer protection within its borders lies squarely under Connecticut

law." Br. at 16. As explained above (Section I(A)(2)), this is incorrect; the Complaint plausibly alleges violations of California law based on Defendant's conduct emanating from California (the effects of which were felt in Connecticut, in Plaintiff's case, and nationwide, in the case of other putative class members), and there is therefore no impediment to the application of California law.

Second, Defendant's argument goes to class certification, not standing or the sufficiency of the pleading, and is therefore premature to address at the motion to dismiss stage. *See, e.g.*, *id.* at *4 ("The choice-of-law question is one that must be answered in the context of class certification."); *Gerstle v. Am. Honda Motor Co.*, No. 16-cv-04384-JST, 2017 U.S. Dist. LEXIS 100580, at *13 (N.D. Cal. June 28, 2017) ("A detailed choice-of-law analysis is a fact-heavy analysis and is generally inappropriate on a motion to dismiss where the parties have not yet developed a factual record.").[12] Here, the Complaint alleges that that Defendant's practices are controlled and emanate from California, such that the Court will not need to apply the quasi-contract law of any other state. Discovery will only confirm these allegations; however, in any event, the Court must accept these allegations as true at the pleading stage, meaning there is presently no basis to conclude that application of foreign law is necessary or appropriate.

Finally, even if the choice-of-law question was ripe, Defendant has failed to meet its burden of showing both that different states' laws should apply, and that differences between those state laws foreclose nationwide class claims in these circumstances. *See Fonseca v. Goya Foods, Inc.*,

---

[12] *Accord Gardner v. StarKist Co.*, No. 19-cv-02561-WHO, 2020 U.S. Dist. LEXIS 194519, at *20 (N.D. Cal. Oct. 17, 2020) (holding choice-of-law inquiry is "fact-intensive" and rejecting "motion to deny class certification" as premature in light of the undeveloped record); *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1170 (N.D. Cal. 2019) ("it is premature to conduct a detailed choice-of-law analysis at this stage of the litigation. Courts have declined to conduct such an analysis at the motion to dismiss stage where further development of the record is necessary to properly decide the choice-of-law question."); *T. K. v. Adobe Sys.*, No. 17-CV-04595-LHK, 2018 U.S. Dist. LEXIS 65557, at *39 (N.D. Cal. Apr. 17, 2018) (it is the Court's "usual approach [to] address[] choice-of-law issues at a later stage"); *Figy v. Lifeway Foods, Inc.*, No. 13-cv-04828-TEH, 2016 U.S. Dist. LEXIS 108755, at *17-18 (N.D. Cal. Aug. 16, 2016) (noting "courts rarely undertake choice-of-law analysis to strike class claims at this early stage in litigation" and holding "that Defendant's motion to strike Plaintiff's nationwide class allegations is premature" (quotation and citation omitted)); *In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2013 U.S. Dist. LEXIS 172784, at *71 (N.D. Cal. Sep. 26, 2013) (the court "cannot conduct a meaningful choice of law analysis . . . at this early stage of the litigation where the issues of contention are still in flux. As other courts have noted, the rigorous choice of law analysis . . . cannot be conducted at the motion to dismiss stage." (collecting cases)).

No. 16-CV-02559-LHK, 2016 U.S. Dist. LEXIS 121716, at *9 (N.D. Cal. Sep. 8, 2016) (denying motion to dismiss class claims where "[d]efendant's briefing does not include a choice of law analysis, and there is no evidence in the record that the conflict between California's law and foreign law is so severe as to preclude applying California law to Plaintiff's nationwide class claims" (quotation and citation omitted)).

## IV.   THERE IS NO BASIS TO STRIKE ANY OF THE COMPLAINT'S ALLEGATIONS

Defendant asks the Court to strike paragraphs 6 and 33-35 of the Complaint, which contain references to online reviews mentioning Defendant's deceptive billing practices, on the basis that they are "third-party hearsay" and do not relate to Plaintiff's claims. *See* Br. at 19-20. However, the allegations, which are assumed to be true at this stage of the litigation, show that Defendant has consistently made the same misrepresentations over a span of years to consumers around the country. These allegations help illustrate the "who, what, when, where, and how" of Defendant's alleged misrepresentations. *See Lack*, 2017 U.S. Dist. LEXIS 142344, at *5-6. Defendant cannot claim the Complaint lacks detail sufficient to satisfy Rule 9(b), while also asking the Court to strike some of those details. Furthermore, these allegations directly support Plaintiff's class allegations, by providing a reasonable basis for, *inter alia*, alleging that the proposed class is sufficiently numerous and subject to a common course of conduct by the Defendant. *See Jue v. Costco Wholesale Corp.*, No. C 10-00033 WHA, 2010 U.S. Dist. LEXIS 22394, at *15 (N.D. Cal. Mar. 11, 2010) ("Class allegations must supported by sufficient factual allegations demonstrating that the class device is appropriate and discovery on class certification is warranted.").

Here once again, Defendant's own cited case undermines their argument. Defendant cites *Davidson v. Kimberly-Clark Corp.*, No. C 14-1783 PJH, 2014 U.S. Dist. LEXIS 110055, at *39 (N.D. Cal. Aug. 8, 2014) and claims that there the Court struck "allegations citing on-line articles/reports and websites." *See* Br. at 19. Defendant fails to mention that the motion to strike was mostly denied, and that the Court only struck the "allegations regarding on-line reports/articles and websites regarding problems caused by disposable or 'flushable' wipes at various municipal waste-water treatment plants and sewage systems," which was not relevant to either the plaintiff's

claims or the class claims. *Davidson*, 2014 U.S. Dist. LEXIS 110055, at *40. By contrast, the Court otherwise denied the motion to strike, holding that "[w]ith regard to allegations regarding products that plaintiff did not purchase and advertising she did not view, ***those allegations may be relevant to whether plaintiff can assert UCL/FAL or CLRA claims on behalf of a proposed class*** as to such products or advertising. Thus, because those allegations may have some potential relevance, they will not be stricken." *Id.* at *38 (emphasis added).

Defendant has not shown that "the matter sought to be stricken could have no possible bearing on the subject matter of the litigation," and its motion to strike should therefore be denied. *See Kosta*, 2013 U.S. Dist. LEXIS 69319, at *11-12 (denying motion to strike).

## CONCLUSION

Defendant's motion to dismiss and/or strike should be denied.

DATED: April 5, 2022                                    Respectfully submitted,

                                                        **BERMAN TABACCO**

                                                        Joseph J. Tabacco, Jr.
                                                        Kristin J. Moody
                                                        44 Montgomery Street, Suite 650
                                                        San Francisco, CA 94104
                                                        Telephone: (415) 433-3200
                                                        Facsimile: (415) 433-6282
                                                        Email: jtabacco@bermantabacco.com
                                                        kmoody@bermantabacco.com

                                                        *Attorneys for Plaintiff and the Proposed Class*

                                                        **WOLF POPPER LLP**


                                                        By: /s/ Patricia Avery
                                                        Patricia Avery (admitted *Pro Hac Vice*)
                                                        Philip M. Black (SBN 308619)
                                                        845 Third Avenue
                                                        New York, NY 10022
                                                        Telephone: (212) 759-4600
                                                        Facsimile: (212) 486-2093
                                                        Email: pavery@wolfpopper.com
                                                                pblack@wolfpopper.com

                                                        *Attorneys for Plaintiff and the Proposed Class*